Fahey, J.
(dissenting). I respectfully dissent and would affirm the Appellate Division’s order. I cannot join in a result that analyzes our statutes to determine that a six-day-old child is not a person.[1]
On the afternoon of May 30, 2008, defendant was the operator of a motor vehicle traveling on Whiskey Road, a curvy thoroughfare in a heavily wooded area of Suffolk County that was divided by a double-yellow line and that provided one lane of travel in each direction. According to the People, defendant, who was 34 weeks’ pregnant, was under the combined influence of alcohol and a prescription drug, using a mobile telephone, and speeding at the time. Undisputed is the fact that the vehicle operated by defendant crossed from its lane of travel into the path of an oncoming vehicle occupied by Robert and Mary Kelly. As a result of the collision that ensued, both of the Kellys died and defendant’s baby was delivered via an *93 emergency cesarean section. Ultimately, however, the baby’s respiratory, renal, and neurological problems proved insurmountable, and she died six days after her birth as a result of what the autopsy report characterized as “hypoxic encephalopathy and prematurity” due to “abruptio placentae,” which in turn was attributed to “maternal blunt force trauma.”[2] Following various events immaterial to the main issue on this appeal, defendant was charged by indictment with three counts of manslaughter in the second degree (Penal Law § 125.15 [1]) with respect to the deaths of each of the Kellys and the baby. The ensuing jury trial saw defendant acquitted of the manslaughter counts related to the Kellys[3] but convicted of the manslaughter count pertaining to the baby, and on appeal the Appellate Division affirmed the judgment (113 AD3d 793 [2d Dept 2014]).
I agree with the majority that this issue is strictly one of statutory interpretation (majority op at 89), but I disagree with its reading of the pertinent statutes. My analysis begins with Penal Law § 125.05, which is entitled “Homicide, abortion and related offenses; definitions of terms.” As its title suggests, section 125.05 contains “definitions . . . applicable to [Penal Law] article [125].” Included in the terms defined is “person” which, “when referring to the victim of a homicide, means a human being who has been born and is alive” (§ 125.05 [1]).
Based on that language alone, a reasonable mind perhaps could conclude that the Penal Law does not provide for criminal liability for manslaughter in the second degree in this context. However, section 125.05 is to be read in tandem (see generally Matter of Wallach v Town of Dryden, 23 NY3d 728, 744 [2014], rearg denied 24 NY3d 981 [2014]; McKinney’s Cons Laws of NY, Book 1, Statutes § 97) with, inter alia, Penal Law § 125.00, which is entitled “Homicide defined” and which states that
*94 “[hjomicide means conduct which causes the death of a person or an unborn child with which a female has been pregnant for more than [24] weeks under circumstances constituting murder, manslaughter in the first degree, manslaughter in the second degree, criminally negligent homicide, abortion in the first degree or self-abortion in the first degree.”
Section 125.00 clearly states a legislative intent to protect both the born and “unborn child [ren] with which a female has been pregnant for more than [24] weeks.” With that precept in mind I turn to Penal Law § 125.15 (1), which embodies the crime of manslaughter in the second degree of which defendant was convicted. Pursuant to that section, “[a] person is guilty of manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person . . . .” (Penal Law § 125.15 [1].) “Recklessly” is defined in Penal Law § 15.05 (3), which states that
“[a] person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.”
Distilled to its essence, defendant’s contention, which the majority credits, is that because her allegedly reckless conduct did not occur while the baby was a person, that is, because the allegedly reckless conduct occurred before the baby was born alive, she cannot be convicted of a crime that requires her reckless actions to have caused the baby’s death. I disagree because I see no such temporal qualification in the relevant parts of the Penal Law. Where, as here, the baby-victim is born alive but subsequently dies, the Penal Law allows for the conviction of a defendant mother of manslaughter in the second degree where the acts causing that baby’s death occurred before that infant was born.
The pertinent parts of the Penal Law speak to victims as they are, not as they were at the time the acts giving rise to the crime were committed. There is no pregnant mother excep *95 tion from criminal liability for reckless acts that result in the death of a mother’s baby postpartum. Indeed, Penal Law § 125.15 (1) does not require that the reckless conduct contemplated therein have occurred while the victim was a person, and the definition of “recklessly” provided in section 15.05 (3) contemplates that a present act yielding a future result will come within its ambit.[4]
In so concluding I note that the Appellate Division reached a similar result in People v Hardy (128 AD3d 1453 [4th Dept 2015], lv denied 25 NY3d 1202 [2015]). There, the “conviction arose from an incident that began when [the defendant] fled the scene of an attempted petit larceny” in an automobile (id. at 1453).
“During that flight, [the defendant’s] vehicle crossed the center line [of the road on which it traveled], side-swiped a car, then collided head-on with another vehicle driven by a woman who had been pregnant for approximately 23 weeks, causing her to sustain severe injuries. In order to save the mother’s life, her female child was delivered by cesarean section,” and “[t]he child’s heart beat for about 2V2 hours before she died” (id. at 1453-1454).
The Appellate Division determined that the evidence was legally sufficient to support the conviction of manslaughter in the second degree (Penal Law § 125.15 [1]) “inasmuch as the child ‘was a “person” from the moment of her birth . . . , notwithstanding that [the] defendant may have perpetrated the act that caused the injury prior to her birth’ ” (id. at 1455, quoting People v Hayat, 235 AD2d 287, 287 [1st Dept 1997], lv denied 89 NY2d 1036 [1997]).
Similar to Hardy is People v Hall (158 AD2d 69 [1st Dept 1990], lv denied upon reconsideration 76 NY2d 1021 [1990]), *96 wherein the Appellate Division applied the “born alive” rule. That rule provides that “a person [cannot] be convicted of an offense involving homicide unless the victim, including a child whose death was the result of prenatal injuries, was first born alive” (id. at 76; see People v Hayner, 300 NY 171, 174 [1949] [enunciating the “born alive” rule]). In Hall the defendant had shot a pregnant woman in the abdomen, which caused that woman to give birth by cesarean section to a baby who lived for 36 hours before dying “from a series of [injuries] attributed to prematurity and oxygen deprivation” (Hall, 158 AD2d at 71). Based on those circumstances the defendant was convicted of, inter alia, manslaughter in the second degree (see id. at 72), and the Appellate Division affirmed that judgment of conviction, essentially reasoning that because the baby had been born alive, it constituted a “person” within the meaning of Penal Law §§ 125.05 (1) and 125.15 (see Hall, 158 AD2d at 73-77).
Hardy and Hall are factually different from this case in that the perpetrator in each of those matters was not the mother of the deceased child. The instant statutes, however, do not draw a distinction between violence perpetrated against an “unborn child” (Penal Law § 125.00) later born alive by that child’s mother and violence perpetrated against the same child by a third party (cf. majority op at 91).
I appreciate that my conclusion could promote the obtuse scenario of encouraging one situated similarly to defendant to allow her unborn child to die within her following like misconduct. Indeed, here, had defendant avoided a cesarean section following the collision and the death occurred in útero, she could not have been charged with manslaughter in the second degree, which is a class C felony (Penal Law § 125.15), for the simple reason that the “person” element of that crime could not have been met (see § 125.05 [1]). Had that scenario come to pass, defendant conceivably could have been charged with the class E felony of abortion in the second degree (§ 125.40) or the class D felony of abortion in the first degree (§ 125.45), but both of those crimes have an intent element that would likely have been impossible to prove in the context of this automobile accident. That hypothetical point notwithstanding, “a perpetrator of illegal conduct takes his [or her] victims as he [or she] finds them” (Hall, 158 AD2d at 79). The statutory scheme in question reflects a legislative prerogative that we have no legal basis to modify.
*97 Here it is beyond dispute that the baby was born alive following the collision but died six days later as a result of injuries caused by the reckless conduct of her mother. Through Penal Law article 125 and, more particularly, Penal Law § 125.15 (1), the legislature consciously chose to place events such as these in the class of circumstances that may constitute manslaughter in the second degree. Based on those plain provisions of the Penal Law, I conclude that the baby was a person in the eyes of the Penal Law, that the mother can be held accountable under section 125.15 (1) for the baby’s death, and that the Appellate Division’s order should be affirmed.
Chief Judge Lippman and Judges Rivera, Abdus-Salaam and Stein concur; Judge Fahey dissents and votes to affirm in an opinion.
Order reversed and the remaining count in the indictment dismissed.

. Defendant raises several contentions on appeal, and in my view none has merit. Given the narrowness of the majority opinion, however, I will limit my discussion to the core question on this appeal, that is, whether the six-day-old child was a “person” within the meaning of Penal Law § 125.15 (1).

. Hypoxic encephalopathy is a condition that occurs when the brain is deprived of oxygen, whereas abruptio placentae (also known as placental abruption) is the premature separation of the placenta from the uterus.

. To be clear, the trial considered the aforementioned manslaughter counts, as well as one count each of aggravated vehicular homicide (Penal Law § 125.14) and driving while ability impaired by the combined influence of drugs or of alcohol and any drug or drugs (Vehicle and Traffic Law § 1192 [4-a]) that were levied in a prior indictment. The latter counts survived defendant’s motion to dismiss the prior indictment, and the jury acquitted defendant of those counts as well as of the counts of manslaughter in the second degree pertaining to the Kellys.

. My conclusion does not defy the rule of lenity given my view that only one construction of the relevant statutes is plausible (see People v Golb, 23 NY3d 455, 468 [2014] [“if two constructions of a criminal statute are plausible, the one more favorable to the defendant should be adopted in accordance with the rule of lenity” (internal quotation marks omitted)], cert denied 574 US —, 135 S Ct 1009 [2015]). Similarly, my conclusion does not breach the principle articulated in Judge Jones’s concurrence in People v Valencia (14 NY3d 927 [2010]) “ ‘that the physical conduct and the state of mind must concur,’ ” and “ ‘that there is concurrence when the defendant’s mental state actuates the physical conduct’ ” (id. at 933-934 [Jones, J., concurring], quoting 1 LaFave, Substantive Criminal Law § 6.3 [a] at 451 [2d ed 2003] [footnotes omitted]) because here defendant’s actions and her state of mind were one.